**SO ORDERED: December 16, 2015.**



_____
**James M. Carr
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| RICHARD LEE BURGE, | ) Case No. 14-05590-JMC-7 |
| | ) |
| Debtor. | ) |
| | ) |
| _____ | ) |
| | ) |
| INDIANA DEPARTMENT OF | ) |
| WORKFORCE DEVELOPMENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. 14-50174 |
| | ) |
| RICHARD BURGE, | ) |
| | ) |
| Defendant. | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came before the Court for a bench trial on August 19, 2015. Plaintiff Indiana Department of Workforce Development ("DWD") appeared by counsel Maricel Skiles, Heather Crockett, and Spencer Tanner. Defendant Richard Burge ("Burge") appeared in person and by counsel Keith Gifford. At the conclusion of the trial, the Court invited post-trial briefs to

be filed by October 5, 2015 and then took the matter under advisement.

The Court, having reviewed the evidence presented at trial, the Brief in Support of Position filed by DWD on August 14, 2015 (Docket No. 29), the Defendant's Trial Brief filed by Burge on August 12, 2015 (Docket No. 28), the Post-Trial Brief in Support of Position filed by DWD on October 2, 2015 (Docket No. 36), the Defendant's Post-Trial Brief filed by Burge on October 2, 2015 (Docket No. 37), and the other matters of record in this adversary proceeding; having heard the presentations of counsel for both parties at a trial on August 19, 2015 (the "Trial"), and being otherwise duly advised, now enters the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

**Findings of Fact**

1.  On June 12, 2014, Burge filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"),[1] in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division.

2.  On September 22, 2014, DWD timely filed a Complaint to Determine Dischargeability of Debt (Docket No. 1) to initiate this adversary proceeding, wherein DWD alleges that Burge's debt to DWD is nondischargeable pursuant to §§ 523(a)(2)(A) and (a)(7).

3.  On November 4, 2014, DWD applied for entry of default by the clerk (Docket No. 5), and on November 5, 2014, the clerk entered default against Burge (Docket No. 6).

4.  On November 6, 2014, DWD filed a Motion for Default Judgment (Docket No. 7) against Burge.

5.  Also on November 6, 2014, counsel for Burge appeared in this adversary proceeding and filed a Motion to Extend Time to File Answer (Docket No. 9). The Court granted

---

[1] All statutory references are to the Bankruptcy Code unless otherwise indicated.

Burge's motion (Docket No. 15) over the objection of DWD at a hearing on December 4, 2014 and denied DWD's Motion for Default Judgment (Docket No. 14).

6. On December 11, 2014, Burge filed an answer (Docket No. 16).

7. Prior to December of 2010, Burge lived solely at his residence in Indianapolis, Indiana. Beginning in that month, Burge resided in Indianapolis but also periodically stayed in Robinson, Illinois for work. He estimates that he stayed in Illinois for six to seven months total and in Indiana for the remaining portion of the period in which the relevant unemployment insurance benefit claims were made.

8. Burge worked at the Marathon oil refinery as a union pipefitter. His job in Illinois was a travel job, for which he traveled outside of his union jurisdiction to work for a different union. When working, he typically worked 12-hour days, six days a week.

9. Burge has peripheral artery disease in his legs and he needed surgery for his condition during this period.

10. During the relevant period, Burge was in a relationship with Mrissa Alvarado. ("Alvarado"). She lived in Burge's Indianapolis residence from April 2009 to the summer of 2011. She did not accompany him when he traveled to Illinois but regularly visited him there. While Burge lived in Indiana, Alvarado managed his banking and financial affairs.

11. Burge gave Alvarado a general power of attorney so that she could manage his personal affairs while he was out of state and so that her disability payments from the state of Washington could be deposited directly into his bank account. Burge was uncertain of the scope and power of a general power of attorney.

12. Given the exhausting nature of his work and his medical limitations, Burge trusted and relied on Alvarado to take care of various things for him including paying bills,

handling his banking, receiving all of his mail, submitting unemployment insurance benefit claims when appropriate, and otherwise managing his personal affairs, both when he was out of state and when he was present in Indiana.

13. Burge had never made any unemployment insurance benefit claims prior to 2009 and was unfamiliar with the use of computers. Alvarado assisted him in setting up his account with DWD in January of 2009. Burge relied on Alvarado's representations to help negotiate the sign-up process and she had access to his username and password to use DWD's system.

14. Burge asked Alvarado to make unemployment insurance benefit claims on his behalf when he believed he was eligible. Burge was not aware that Alvarado was making improper unemployment insurance benefit claims on his behalf until contacted by DWD in 2011.

15. Burge, through Alvarado, made his first unemployment insurance benefit claim in January of 2009.

*First Claim Investigation Period*

16. During the period from January 17, 2009 to July 18, 2009, Alvarado made unemployment insurance benefit claims on behalf of Burge. For a large portion of this time period, Burge was eligible to receive benefits. However, based on DWD investigatory records, Burge was employed and received wages in the compensable period dating from May 2, 2009 to June 6, 2009 which resulted in an overpayment of $1,950 plus a 25% statutory penalty in the amount of $487.50 for a total overpayment of $2,437.50.

*Second Claim Investigation Period*

17. During the period from July 25, 2009 to January 8, 2011, Alvarado made improper unemployment insurance benefit claims using Burge's DWD account. According to DWD investigatory records, Burge was employed and received wages during the compensable

periods dating from July 25, 2009 through August 15, 2009, September 5, 2009 through October 17, 2009, December 5, 2009 through December 12, 2009, July 3, 2010 through July 10, 2010, October 23, 2010 through November 20, 2010 and December 25, 2010 through January 8, 2011 which resulted in an overpayment of $8,970.

18. During the period from August 22, 2009 to August 29, 2009, Alvarado, at Burge's direction, made a request for unemployment insurance benefits for a time period in which he was medically unable to work because of his peripheral artery disease. He received disability income during this period. Burge believed that he was eligible for unemployment insurance benefits at that time. The request resulted in an overpayment of $780.

19. For the period covered in this second claims investigation, including the period in which Burge was temporarily disabled, DWD applied a 50% statutory penalty in the amount of $4,875 for a total overpayment of $14,625.

*Third Claim Investigation Period*

20. In a separate investigation relating to the same July 25, 2009 to January 8, 2011 period, DWD investigatory records show that Burge was employed and received wages during the compensable periods dating from July 17, 2010 through September 18, 2010 which resulted in an overpayment of $3,900 plus a 100% statutory penalty for a total overpayment of $7,800.

*Fourth Claim Investigation Period*

21. During the period from February 19, 2011 through April 9, 2011, Alvarado made improper unemployment insurance benefit claims using Burge's DWD account. According to DWD investigatory records, Burge was employed and received wages during the compensable periods dating from March 5, 2011 through April 2, 2011 which resulted in an overpayment of $1,950 plus a 100% statutory penalty for a total overpayment of $3,900.

*Investigation and Aftermath*

22. In April of 2011 while Burge was in Illinois, Burge received a phone call from Erin Certolic, an investigator with DWD. She informed him that he had received overpayments of his unemployment insurance benefits.

23. Burge attempted to contact Alvarado to investigate DWD's allegations but he was unable to reach her immediately. Burge sought and received time off from work to return to Indiana.

24. When Burge returned home, he discovered that much of his apartment was empty except for his clothes and personal items, and that his bank account was overdrawn by about $500. He found that he was behind on his truck payment by 3 months and his rent by 2 months. Acting upon the advice of DWD's investigator, Burge cancelled the DWD debit card issued to him because it was still in use. Burge never possessed the DWD debit card.

25. Burge has not spoken with Alvarado since attempting to contact her after DWD's phone call and believes she is in Seattle. He provided all the information he had about Alvarado to DWD through its investigator.

26. Burge completed a sworn statement for DWD that stated his belief that he had been deceived and defrauded by Alvarado and that he took responsibility for the overpayments.

27. Burge was aware that employers send employment information to DWD regularly to verify employment.

**Conclusions of Law**

1. Any finding of fact above will also be a conclusion of law and any conclusion of law will also be a finding of fact to support the judgment of the Court.

2.	The Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the General Order of Reference issued by the United States District Court for the Southern District of Indiana on July 11, 1984.

3.	Venue of this adversary proceeding is proper in this Court and Division pursuant to 28 U.S.C. § 1409(a).

4.	This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

5.	Exceptions to discharge under § 523 "are to be [construed] strictly against a creditor and liberally in favor of the debtor." *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). "The burden is on the objecting creditor to prove exceptions to discharge." *Id.* (citation omitted). The burden of proof required is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661 (1991).

6.	Section 523(a)(2)(A) provides, in relevant part:

> A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
>
> (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>> (A)   false pretenses, a false representation, or actual fraud… .

7.	To prevail on a nondischargeability claim under the "false pretenses" or "false representation" theories, a creditor must prove all of the following elements: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010).

8. "[A]ctual fraud is broader than misrepresentation," *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000), in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability for "actual fraud." *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002) (citing *McClellan*, 217 F.3d at 894). "Actual fraud" is defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893 (internal citations omitted). In such cases, a creditor must prove "(1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 772 (Bankr. N.D.Ill. 2010) (citing *McClellan*, 217 F.3d at 894).

9. For each theory of § 523(a)(2)(A), DWD must prove by a preponderance of the evidence that Burge intended to defraud it, but DWD has presented no evidence that Burge intended to defraud DWD. According to his uncontroverted testimony, Alvarado made the claims that resulted in overpayments, and Burge was unaware of Alvarado's actions until after they were taken. Thus, Alvarado defrauded DWD, not Burge. The only exception is during the period when Burge received benefits while he was also receiving disability income and DWD has presented no evidence that contradicts Burge's testimony that he believed he was entitled to unemployment benefits at the time.

10. As an alternative to proving Burge's intent, DWD contends that Alvarado was Burge's agent for purposes of making the fraudulent claims and that her fraud should be ascribed to Burge for purposes of § 523(a)(2)(A). However, the 7th Circuit Court of Appeals recently held in *Sullivan v. Glenn (In re Glenn)*, 782 F.3d 378 (7th Cir. 2015), *cert. denied*, 577 U.S. __

(2015), that a principal is not charged with an agent's misrepresentations for nondischargeability purposes unless the principal "knew or should have known of the agent's fraud" or "was recklessly indifferent to the acts of his agent." *Id.* at 382 (citing *In re Walker*, 726 F.2d 452, 454 (8th Cir. 1984)).

11.  No evidence was presented that Burge knew of Alvarado's misrepresentations to DWD. Burge may have been foolish in his reliance upon Alvarado, but no evidence was presented that he knew of facts regarding her dealings with DWD that would cause his failure to stop her to rise to the level of recklessness (which is, of course, a level of culpability higher than negligence or gross negligence) or that would show that he knew or should have known of her actions. There is no evidence that Burge profited financially from Alvarado's misdeeds. In fact, Burge testified that he also suffered financial loss as a result of Alvarado's misdeeds.

12.  Therefore, DWD has not met its burden with respect to § 523(a)(2)(A).

13.  Section 523(a)(7) provides, in relevant part:

> A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
>
> to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss… .

14.  There was no dispute at trial regarding § 523(a)(7). Based on Ind. Code § 22-4-13-1.1(b), DWD levied statutory penalties against Burge that are payable to and for the benefit of a governmental unit and that are not compensation for actual pecuniary loss. Therefore, the penalties imposed against Burge are nondischargeable pursuant to § 523(a)(7).

Accordingly, the Court concludes that Burge is entitled to a judgment that the debt owed by Burge to DWD is not excepted from discharge pursuant to § 523(a)(2)(A) and DWD is entitled to a judgment that only the debt for statutory penalties in the amount of $11,212.50 is

excepted from discharge pursuant to § 523(a)(7). The Court will enter judgment consistent with these findings of fact and conclusions of law contemporaneously herewith.

    IT IS SO ORDERED.

# # #